# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| JENNIFER YONCHUK,<br>3878 Riviera Drive<br>San Diego, CA 92109<br><br>     Plaintiff,<br><br>v.<br><br>LIBERTY PROPERTY TRUST<br>c/o CSC-Lawyers Incorporating Service Company<br>7 St. Paul Street, Suite 820<br>Baltimore, MD 21202<br><br>WILLIAM P. HANKOWSKY,<br>c/o Liberty Property Trust<br>650 East Swedesford Road, Suite 400<br>Wayne, PA 19087<br><br>THOMAS C. DELOACH, JR.,<br>c/o Liberty Property Trust<br>650 East Swedesford Road, Suite 400<br>Wayne, PA 19087<br><br>KATHERINE E. DIETZE,<br>c/o Liberty Property Trust<br>650 East Swedesford Road, Suite 400<br>Wayne, PA 19087<br><br>ANTONIO FERNANDEZ,<br>c/o Liberty Property Trust<br>650 East Swedesford Road, Suite 400<br>Wayne, PA 19087<br><br>DANIEL P. GARTON,<br>c/o Liberty Property Trust<br>650 East Swedesford Road, Suite 400<br>Wayne, PA 19087<br><br>ROBERT G. GIFFORD,<br>c/o Liberty Property Trust<br>650 East Swedesford Road, Suite 400<br>Wayne, PA 19087 | Case No. _____<br><br>JURY TRIAL DEMANDED |

|  |  |
|---|---|
| DAVID L. LINGERFELT,<br>c c/o Liberty Property Trust<br>650 East Swedesford Road, Suite 400<br>Wayne, PA 19087 | )<br>)<br>)<br>)<br>) |
| MARGUERITE NADER,<br>c/o Liberty Property Trust<br>650 East Swedesford Road, Suite 400<br>Wayne, PA 19087 | )<br>)<br>)<br>)<br>) |
| LAWRENCE D. RAIMAN,<br>c/o Liberty Property Trust<br>650 East Swedesford Road, Suite 400<br>Wayne, PA 19087 | )<br>)<br>)<br>)<br>) |
| and | )<br>) |
| FREDRIC J. TOMCZYK,<br>c/o Liberty Property Trust<br>650 East Swedesford Road, Suite 400<br>Wayne, PA 19087 | )<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

**COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**

Plaintiff Jennifer Yonchuk ("Plaintiff"), upon information and belief, including an examination and inquiry conducted by and through her counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for her Complaint:

**NATURE AND SUMMARY OF THE ACTION**

1.    This action is brought by Plaintiff against Liberty Property Trust ("Liberty" or the "Company") and the members of its Board of Trustees (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a) and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed

- 2 -

transaction, pursuant to which Liberty will be acquired by Prologis, Inc. ("Prologis") (the "Proposed Transaction").

2. On October 27, 2019, Liberty and Prologis issued a joint press release announcing they had entered into an Agreement and Plan of Merger dated October 27, 2019 (the "Merger Agreement") pursuant to which a newly created indirect wholly owned subsidiary of Liberty will merge with and into Liberty, with Liberty continuing as the surviving entity and as an indirect wholly owned subsidiary of Leaf Holdco Property Trust, a Maryland real estate investment trust and current wholly owned subsidiary of Liberty ("New Liberty Holdco"), which will be followed by the merger of New Liberty Holdco with and into Lambda REIT Acquisition LLC ("Prologis Merger Sub"), a wholly owned subsidiary of Prologis, with Prologis Merger Sub continuing as the surviving company (the "Proposed Transaction").  Under the terms of the Merger Agreement, each Liberty stockholder will be entitled to receive 0.675 of a newly issued share of Prologis common stock for each Liberty common share that they own (the "Merger Consideration").  Based on Prologis' closing stock price of $88.36 on December 16, 2019, the Merger Consideration has an implied value of $59.64.  Upon completion of the Proposed Transaction, Liberty and Prologis stockholders will own approximately 14% and 86% of the combined company, respectively.

3. On December 23, 2019, Liberty filed a Definitive Proxy Statement on Schedule 14A (the "Proxy Statement") with the SEC.  The Proxy Statement, which recommends that Liberty stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) the data and inputs underlying the financial valuation analyses that support the fairness opinions provided by the Company's financial advisors, Goldman Sachs & Co. LLC ("Goldman") and Citigroup Global Markets Inc. ("Citigroup"); and (ii) Citi's potential conflicts of interest.  Defendants authorized the issuance of

the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. In short, unless remedied, Liberty's public stockholders will be irreparably harmed because the Proxy Statement's material misrepresentations and omissions prevent them from making a sufficiently informed voting decision on the Proposed Transaction. Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391 as well as under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, because the conduct at issue had an effect in this District; and the Company is incorporated in this District.

## THE PARTIES

8. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Liberty.

9. Defendant Liberty is a Maryland real estate investment trust with its principal executive offices located at 650 East Swedesford Road, Suite 400, Wayne, Pennsylvania 19087.

Through its controlling interest in Liberty Property Limited Partnership, the Company is a leader in commercial real estate, serving customers in the United States and United Kingdom, through the development, acquisition, ownership and management of superior logistics, warehouse, manufacturing, and research and development ("R&D") facilities in key markets. The Company's common stock is traded on the New York Stock Exchange under the ticker symbol "LPT."

10. Defendant William P. Hankowsky ("Hankowsky") has been President of the Company since 2002 and Chief Executive Officer ("CEO"), Chairman and a trustee of the Company since 2003.

11. Defendant Thomas C. DeLoach, Jr. ("DeLoach") has been a trustee of the Company since 1999.

12. Defendant Katherine E. Dietze ("Dietze") has been a trustee of the Company since 2011.

13. Defendant Antonio Fernandez ("Fernandez") has been a trustee of the Company since 2014.

14. Defendant Daniel P. Garton ("Garton") has been a trustee of the Company since 2001.

15. Defendant Robert G. Gifford ("Gifford") has been a trustee of the Company since 2018.

16. Defendant David L. Lingerfelt ("Lingerfelt") has been a trustee of the Company since 1995.

17. Defendant Marguerite Nader ("Nader") has been a trustee of the Company since 2017.

18. Defendant Lawrence D. Raiman ("Raiman") has been a trustee of the Company

since 2019.

19.  Defendant Fredric J. Tomczyk ("Tomczyk") has been a trustee of the Company since 2014.

20.  Defendants identified in paragraphs 10-19 are collectively referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

21.  Prologis is a Maryland corporation with its principal executive offices located at Pier 1, Bay 1, San Francisco, California 94111.  Prologis is a global leader in logistics real estate with a focus on key markets in 19 countries on four continents.  Prologis owns, manages and develops well-located, high-quality logistics facilities.  Prologis's common stock is traded on the New York Stock Exchange under the ticker symbol "PLD."

22.  Prologis, L.P. ("Prologis OP") is a Delaware limited partnership with its principal executive offices located at Pier 1, Bay 1, San Francisco, California 94111.  Prologis OP is the primary operating subsidiary of Prologis.  As of September 30, 2019, Prologis owned an approximate 97.22% common general partnership interest in Prologis OP and 100% of the preferred units in Prologis OP.  As the sole general partner of Prologis OP, Prologis has complete responsibility and discretion in the day-to-day management and control of Prologis OP.

## SUBSTANTIVE ALLEGATIONS

**Company Background**

23.  Liberty is a leader in commercial real estate, serving customers in the United States and United Kingdom, through the development, acquisition, ownership and management of superior logistics, warehouse, manufacturing, and R&D facilities in key markets.  Liberty's 112 million square foot operating portfolio provides productive work environments to 1,200 tenants.

24. On July 30, 2019, the Company reported its financial results for the second quarter of 2019. Net income available to common stockholders was $0.67 per diluted share, compared to $0.13 per diluted share for the second quarter of 2018. The National Association of Real Estate Investment Trusts ("NAREIT") Funds from Operations ("FFO") available to common stockholders was $0.68 per diluted share, compared to $0.12 per diluted share for the second quarter of 2018. Defendant Hankowsky commented on the quarter's financial results, stating:

> Liberty's second quarter activity was characterized by high leasing volume coupled with very attractive lease economics . . . . This execution reflects the enduring strength of this remarkable industrial market, which provides unprecedented opportunity to achieve high retention rates while at the same time drive rents, minimize leasing costs, and lock in longer lease terms with contractual rent increases on every lease.

**The Proposed Transaction**

25. On October 27, 2019, Liberty and Prologis issued a joint press release announcing the Proposed Transaction. The press release states, in relevant part:

> SAN FRANCISCO and WAYNE, Pa, October 27, 2019 -- Prologis, Inc. (NYSE: PLD) and Liberty Property Trust (NYSE: LPT) today announced that the two companies have entered into a definitive merger agreement by which Prologis will acquire Liberty in an all-stock transaction, valued at approximately $12.6 billion, including the assumption of debt. The board of directors of Prologis and the board of trustees of Liberty have each unanimously approved the transaction.
>
> "Liberty's logistics assets are highly complementary to our U.S. portfolio and this acquisition increases our holdings and growth potential in several key markets," said Prologis chairman and CEO Hamid R. Moghadam. "The strategic fit between the portfolios allows us to capture immediate cost and long-term revenue synergies."
>
> The transaction deepens Prologis' presence in target markets such as Lehigh Valley, Chicago, Houston, Central PA, New Jersey and Southern California.
>
> The acquisition on an owned and managed basis comprises:
>
> - 107 million square foot logistics operating portfolio; 87 percent overlap with key markets
> - 5.1 million square feet of logistics development in progress

- 1,684 acres of land for future logistics development with build-out potential of 19.7 million square feet
- 4.9 million square foot office operating and development portfolio

Prologis plans to dispose of approximately $3.5 billion of assets on a pro rata share basis. This includes $2.8 billion of non-strategic logistics properties and $700 million of office properties.

"Liberty and Prologis represent two of the finest teams of real estate professionals and two of the finest portfolios of industrial real estate ever assembled," said Bill Hankowsky, Liberty chairman and chief executive officer. "The joining of these two platforms at this moment, when industrial logistics has become so pivotal to the new economy, will further the industry's ability to support the nation's supply chain and enhance value creation for our combined shareholders. It is a testament to Liberty's outstanding teams of professionals, both present and past."

"Liberty's high-quality logistics real estate will strengthen our portfolio as well as our customer roster," said Prologis chief investment officer Eugene F. Reilly. "We are also excited about the caliber of talent at Liberty and expect a number of their employees to join us to help manage the portfolio and execute on capital deployment."

This transaction is anticipated to create immediate cost synergies of approximately $120 million from corporate general and administrative cost savings, operating leverage, lower interest expense and lease adjustments. Initially, this transaction is expected to increase annual core funds from operations* (Core FFO) per share by $0.10-$0.12. Upon stabilization of the acquired development assets, completion of the planned non-strategic asset sales and redeployment of the related proceeds, annual stabilized Core FFO per share is forecasted to increase by an additional $0.04 per share for a total of $0.14-$0.16.

Further, there are future synergies with the potential to generate approximately $60 million in annual savings, including $10 million from revenue synergies and $50 million from incremental development value creation.

"The execution of this transaction is further evidence of the strength of Prologis' balance sheet and will create significant additional capital from the future sale of the non-core assets," said Prologis chief financial officer Thomas S. Olinger. "The combination of these portfolios will drive incremental Core FFO growth and long-term shareholder value."

Under the terms of the agreement, Liberty shareholders will receive 0.675x of a Prologis share for each Liberty share they own. The transaction, which is currently expected to close in the first quarter of 2020, is subject to the approval of Liberty shareholders and other customary closing conditions.

**The Proxy Statement Contains Material Misstatements or Omissions**

26. Defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Liberty's stockholders. The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction.

27. Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) the data and inputs underlying the financial valuation analyses that support the fairness opinions provided by the Company's financial advisors, Goldman and Citi; and (ii) Citi's potential conflicts of interest.

*Material Omissions Concerning Goldman's and Citi's Financial Analyses*

28. The Proxy Statement describes Goldman's and Citi's fairness opinions and the various valuation analyses performed in support of their opinions. However, the description of Goldman's and Citi's fairness opinions and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Liberty's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Goldman's and Citi's fairness opinions in determining whether to vote in favor of the Proposed Transaction.

29. With respect to Goldman's *Illustrative Discounted Cash Flow Analysis* of Liberty, the Proxy Statement fails to disclose: (i) the line items underlying unlevered free cash flow; (ii) quantification of the inputs and assumptions underlying the discount rate range of 4.5% to 5.5%; (iii) the terminal values for the Company; (iv) the illustrative terminal value of non-stabilized assets in the terminal year based on the incremental stabilized net operating income; (v) Liberty's

net debt and preferred equity and non-controlling interests as of September 30, 2019; and (vi) the number of fully diluted outstanding shares of Liberty utilized by Goldman in its analysis.

30. With respect to Goldman's *Illustrative Discounted Cash Flow Analysis* of Prologis, the Proxy Statement fails to disclose: (i) the line items underlying unlevered free cash flow; (ii) quantification of the inputs and assumptions underlying the discount rate range of 4.5% to 5.5%; (iii) the terminal values for Prologis; (iv) the illustrative terminal value of non-stabilized assets in the terminal year based on the incremental stabilized net operating income; (v) Prologis' net debt and preferred equity and non-controlling interests as of September 30, 2019; and (vi) the number of fully diluted outstanding shares of Liberty utilized by Goldman in its analysis.

31. With respect to Goldman's *Illustrative Present Value of Future Share Price Analysis for Liberty Standalone*, the Proxy Statement fails to disclose: (i) Goldman's basis for applying price to next twelve months ("NTM") FFO multiples ranging from 17.0x to 21.0x; and (ii) quantification of the inputs and assumptions underlying the discount rate of 5.5%.

32. With respect to Goldman's *Illustrative Present Value of Future Share Price Analysis for Prologis Standalone*, the Proxy Statement fails to disclose: (i) Goldman's basis for applying price to NTM FFO multiples ranging from 22.0x to 26.0x; and (ii) quantification of the inputs and assumptions underlying the discount rate of 5.5%.

33. With respect to Goldman's *Illustrative Present Value of Future Share Price Analysis for Pro Forma Value to be Received per Liberty Common Share*, the Proxy Statement fails to disclose: (i) Goldman's basis for applying price to NTM FFO multiples ranging from 21.5x to 25.5x; and (ii) quantification of the inputs and assumptions underlying the discount rate of 5.5%.

34.     With respect to Goldman's *Illustrative Implied Premia of Precedent REIT Transactions*, the Proxy Statement fails to disclose the individual multiples and financial metrics for the transactions observed by Goldman in the analysis.

35.     With respect to Citi's *Discounted Cash Flow Analysis* of Liberty, the Proxy Statement fails to disclose: (i) the line items underlying unlevered free cash flow; (ii) quantification of the inputs and assumptions underlying the discount rate range of 5.72% to 6.52%; (iii) the terminal values for the Company; (iv) the illustrative terminal value of non-stabilized assets in the terminal year based on the incremental stabilized net operating income; and (v) the implied perpetuity growth rates resulting from the analysis.

36.     With respect to Citi's *Discounted Cash Flow Analysis* of Prologis, the Proxy Statement fails to disclose: (i) the line items underlying unlevered free cash flow; (ii) quantification of the inputs and assumptions underlying the discount rate range of 6.44% to 7.38%; (iii) the terminal values for Prologis; (iv) the illustrative terminal value of non-stabilized assets in the terminal year based on the incremental stabilized net operating income; and (v) the implied perpetuity growth rates resulting from the analysis.

37.     With respect to Citi's *Combined Company DCF Analysis*, the Proxy Statement fails to disclose: (i) the line items underlying unlevered free cash flow; (ii) quantification of the inputs and assumptions underlying the discount rate range of 6.44% to 7.38%; (iii) the terminal values for the combined company; and (iv) the implied perpetuity growth rates resulting from the analysis.

38.     With respect to Citi's analysis of research analysts' price targets for Liberty common shares, the Proxy Statement fails to disclose: (i) the price targets observed by Citi in the analysis; and (ii) the sources thereof.

39. The omission of this information renders the statements in the "Opinion of Liberty's Financial Advisors" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

*Material Omissions Concerning Potential Conflicts of Interest of Citi*

40. The Proxy Statement fails to disclose material information concerning the potential conflicts of interest faced by Citi.

41. The Proxy Statement sets forth: "Liberty has agreed to pay Citi for its services in connection with the proposed transaction an aggregate fee of approximately $20 million, of which *a part* was payable upon delivery of Citi's opinion and *the large majority* is payable contingent upon consummation of the transaction." Proxy Statement at 88 (emphasis added). The Proxy Statement fails, however, to specify how much of the fee is payable upon delivery of Citi's opinion and how much is payable contingent upon closing of the Proposed Transaction.

42. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection and implementation of strategic alternatives.

43. The omission of this information renders the statements in the "Opinion of Liberty's Financial Advisors" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

44. The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement. Absent disclosure of the foregoing material information, Plaintiff and the other Liberty stockholders will be unable to make a sufficiently informed voting decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

45. Plaintiff repeats all previous allegations as if set forth in full.

46. During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

47. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement. The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about the data and inputs underlying the financial valuation analyses that support the fairness opinions provided by Goldman and Citi and potential conflicts of interest of Citi. The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

48. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

49. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

50. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for Violations of
### Section 20(a) of the Exchange Act

51.     Plaintiff repeats all previous allegations as if set forth in full.

52.     The Individual Defendants acted as controlling persons of Liberty within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or trustees of Liberty, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

53.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

54.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy Statement.

55.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed

Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company trustees had input into.

56. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

57. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Liberty's stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in her favor on behalf of Liberty, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Liberty stockholders;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: January 7, 2019

**LEVI & KORSINSKY LLP**

*/s/ Donald J, Enright*
Donald J. Enright (Bar No. 13551)
1101 30th Street, N.W., Suite 115
Washington, DC 20007
T: (202) 524-4290
F: (202) 333-2121
Email: denright@zlk.com

*Attorneys for Plaintiff*

**OF COUNSEL:**

**WEISSLAW LLP**
Richard A. Acocelli
Michael A. Rogovin
Kelly K. Moran
1500 Broadway, 16th Floor
New York, New York 10036
Tel: (212) 682-3025
Fax: (212) 682-3010

*Attorneys for Plaintiff*